Agnes, Peter W., J.
J. Introduction
The request to fix attorneys fees and costs arises out of this Court’s orders, which entered on August 18, 2006, compelling defendant St. Paul Fire and *647 Marine Insurance Company (hereinafter “St. Paul”) to produce documents and answer interrogatories, and awarding costs and attorneys fees to plaintiff Neles-Jamesbuiy Inc. (hereinafter “NJI"), for both. NJI now offers affidavits supporting their request for $29,148.86 in attorneys fees and costs.[1] St. Paul argues that approximately $15,000 of the requested sum was for work not done in obtaining the orders and the remaining costs are “unreasonable." (Def.’s Opp’n Req. Fix Attys Fees at 2.) St. Paul’s motion for reconsideration asks this court to vacate its award of costs and fees to NJI. Finally, St. Paul moves to compel NJI to produce documents including copies of pleadings, written discovery, and documents exchanged by parties and produced by non-parties.
2. Fees and Reconsideration
Massachusetts law provides, at the discretion of the court, for the award of “reasonable expenses incurred in obtaining” an order compelling discovery. Mass.R.Civ.P. 37(a)(4). The two questions here are 1) whether the amount requested by NJI reflects expenses incurred in obtaining both orders and 2) whether those expenses are reasonable.

Scope of Expenses

NJI suggests that St. Paul should be sanctioned for the “full amount of attorneys fees and expenses that NJI incurred as a result of St. Paul’s failure to comply with its discovery obligations.” (Pl.’s Req. Fix Attys Fees at 2.) However, the Court may only award the “reasonable expenses incurred in obtaining the order” including attorneys fees. See Mass.R.Civ.P. 37(a)(4). This construction is similar to the Federal rule. See Fed.R.Civ.P. 37(a)(4)(A) (which allows for “reasonable expenses incurred in making the motion”). “Because the Massachusetts Rules of Civil Procedure are patterned after the Federal rules, we interpret our rules consistently with the construction given their Federal counterparts, absent compelling reasons to the contrary or significant differences in content.” Strom v. Am. Honda Motor Co., 423 Mass. 330, 335, (1996) (quotations and citations omitted).
While reviewing an opposing party’s responses to discovery requests and requesting supplementation may chronologically precede both the contemplation and the drafting of the motions to compel, they are part and parcel of the normal course of discovery: just because they are the antecedents of a motion to compel does not make them actions undertaken ‘in obtaining. the order.’ It is elementary that actions undertaken ‘in obtaining the order’ cannot precede the initial contemplation and drafting of the motion to compel discovery. Thus fees and costs incurred while reviewing the discovery responses and requesting their supplementation may not be awarded. Furthermore, effort expended after an order is issued cannot logically be expended in obtaining an order.
The first mention of preparation of a motion to compel discovery appears in the invoice item dated June 28, 2006. This Court issued the orders compelling discovery on August 18, 2006. Costs incurred in obtaining the orders could not possibly accrue after the order was issued. Thus, the time frame for costs and fees incurred in obtaining the order is work done between June 29, 2006 and August 18, 2006. An accounting of the fees and costs actually expended by the attorneys for NJI between June 28, 2006 and August 18, 2006, incurred in obtaining the order, results in 69 hours and at a total cost of $14,008.36, including $118.36 in Westlaw and copying charges.

Reasonableness of Expenses

The next question is whether the fees and costs incurred in obtaining the order were reasonable. Since St. Paul does not dispute the reasonableness of the costs, a $109.98 Westlaw charge and an $8.38 charge for photocopies, we will assume that they are reasonable. What remains is the question of whether the attorneys fees were reasonable. Massachusetts employs the so-called “lodestar method” to determine reasonable fees by multiplying the time reasonably spent on the case by a reasonable hourly rate. See Fontaine v. Ebtec Corp., 415 Mass. 309, 324 (1993). Thus, here we must make the twofold inquiry as to whether, 1) the total number of hours billed in obtaining the order was reasonable and 2) the hourly rate was reasonable.
The Number of Hours
Attorneys for NJI billed for 69 hours spent in obtaining the orders between June 28, 2006 and August 18, 2006. These hours encompass the preparation of motions to compel the production of documents and to compel supplemental interrogatory responses, and accompanying memoranda. The motion to compel the production of documents, the accompanying memorandum and certificates of service total 11 pages. Appended to it are 6 pages of exhibits. The memorandum in support of the motion to compel the production of documents, 7 pages in total, is straightforward and relatively uncomplicated. The motion to compel further answer to interrogatories, the accompanying memorandum and certificates of service total 17 pages. Appended to it are, approximately, 50 pages of exhibits. The memorandum in support of the motion to compel further answers to interrogatories, 13 pages in total, is also straightforward and relatively uncomplicated.[2]
Based on the record before the court, specifically the length of the documents produced and their relatively uncomplicated nature, the reported time of 69 hours to complete the memorandum, affidavits and accompanying exhibits is not reasonable. It is well within the discretion of the trial judge to determine what hours are reasonable. See, e.g. T&D Video, Inc. v. City of Revere, 66 Mass.App.Ct. 461, 481 (2006). Further, “it is the court’s prerogative (indeed, its duty) *648 to winnow out excessive hours.” Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 296 (1st Cir. 2001). Accordingly, I will reduce the amount of hours by half.

The Hourly Rate

NJI is represented by James L. Ackerman and Stephanie L. Moon from the law firm of Wadland & Ackerman in Andover, Massachusetts. The rate charged by attorney Ackerman in this case was $285 per hour; the rate charged by attorney Moon was $175 per hour. Attorney Ackerman has been practicing law since 1971; attorney Moon has been practicing law since 2002. St. Paul does not dispute that these rates are both reasonable and typical. I find that these rates are both reasonable, given the relative experience of the attorneys, and typical of those practicing in Massachusetts outside of Boston.

The Lodestar Calculation

Thus, applying the lodestar calculation, we multiply the hours spent by the hourly rate for each lawyer then reduce the total by half. Attorney Ackerman spent 16.5 hours on the case between June 28 and August 18, at a rate of $285 per hour. The product of his hours and rate is $4,702.50 and half of that is $2351.25. Attorney Moon spent 52.5 hours on the case between June 28 and August 18, at a rate of $175 per hour. The product of her hours and rate is $9,187.50 and half of that is $4,593.75. The total of attorneys fees awarded is $6,954 plus costs of $118.36 making the grand total $7,063.36.

St Paul’s Motion for Reconsideration

St. Paul moves for this Court to reconsider its award of fees and costs incurred by NJI in obtaining its orders to compel. “Where there has been no change of circumstances, a court or judge is not bound to reconsider a case, an issue, or a question or fact of law [in the same case], once decided.” Peterson v. Hopson, 306 Mass. 597, 599 (1940). Because St. Paul’s memorandum introduced no new evidence in support of its motion to suggest a change of circumstances, the motion is denied. St. Paul’s request for a hearing is, likewise, denied.

3. St Paul’s Motion to Compel

St. Paul also moves to compel the production of documents. Specifically, St. Paul seeks the production of “pleadings, written discovery, and documents exchanged by parties and produced by non-parties.” (Def's Mem. Supp. Compel Disc. at 7.) NJI claims that the documents sought represent a “vast amount of material” that is neither relevant nor reasonably calculated to lead to discoverable evidence. (Pl.’s Mem. Opp’n Mot. Compel at 1-2.)
The scope of discovery is broad. “The United States Supreme Court has defined relevancy under Fed.R.Civ.P. 26(b)(1), the parallel rule to Mass.R.Civ.P. 26 (b)(1), broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. Consistently with the notice-pleading system established by the Rules, discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues. Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits.” Cronin v. Strayer, 392 Mass 525, 534 (1984) (citations and quotations omitted). Unless it is clear that the information sought has no possible connection to the subject matter of the action, discovery should be allowed. Meyer v. King, 1995 Mass.Super. LEXIS 13 at *5 (Mass.Super. 1995) (citing Miller v. Doctor’s Gen. Hosp., 76 F.R.D. 136, 138 (W.D.Okla. 1977). The documents requested appear to have a clear connection to the subject matter of the pending action.
Further, NJI admits “St. Paul would have been entitled to copies of the pleadings and certain documents had it been a defendant when the pending action was originally filed [on or about May 3, 2002].” (Letter from Stephanie Moon to Jillian Hirsch Jan 13, 2006.) NJI may not deny St. Paul discovery on the grounds that NJI decided not to join St. Paul as a defendant until April 1, 2005. The date a defendant is added to a complaint does not change the scope of discovery. Thus, NJI must make the requested documents available to St. Paul. To help mitigate the costs of copying such a large number of documents, NJI may make the documents available for inspection at a time that is convenient for St. Paul pursuant to Mass.R.Civ.P. 34(a)(1). Rather than force NJI to move a mountain of documents, St. Paul may move itself to the mountain.

ORDER

For the foregoing reasons, NJI’s motion to fix attorneys fees is ALLOWED and attorneys fees shall be fixed in the amount of $7,063.36. St. Paul’s motion for reconsideration is DENIED and St. Paul’s motion to compel the production of documents is ALLOWED.

First there is a matter of arithmetic. NJI requests $29,148.86 in fees and costs. (Pl.’s Req. Fix Attys Fees at 1.) St. Paul suggests an arithmetical error on the part of NJI and that the total amount reflected by NJI’s invoices is $28,448.86 (Def.’s Opp’n Req. Fix Attys Fees at 2 n.2.) The correct total of costs and fees listed in the invoices provided by NJI is, in fact, $28,587.93. It appears that St. Paul forgot to add the copying fee of $139.07 on page 4 of the invoice entitled For Professional Services Rendered through September 12, 2006. The source of NJI’s arithmetical error is not as obvious; although, the total provided in the third invoice is over by $1,050 and the subtotal provided in the fourth invoice is under by $350.

Defendant claims that ten of the thirteen pages of this memorandum (“the memo") were “simply extracted” from a June 27, 2006 letter (“the letter”) sent by NJI to St. Paul (Def.’s Opp’n Req. Fix Attys Fees at 5.) While it is clear that some of the text from the letter was incorporated into the memo, it is equally clear that significant additional work went into the preparation of the memo.